Lekelvin Jose Carlton appealed from his conviction for murder, see § 13A-6-2(a)(1), Ala. Code 1975. He was sentenced to life in prison. On appeal Carlton argues, as he did at trial, that the trial court erred in admitting into evidence his statement to law-enforcement authorities absent a properMiranda[1] predicate.[2] Specifically, Carlton asserts that his statement was admitted into evidence without requiring the State to prove that he had been informed of his complete rights as set forth in Miranda.
The majority, in its unpublished memorandum, finds that "[t]he appellant correctly argues that Corporal Charles Bagsby of the Mobile Police Department testified only that he advised [Carlton] that he had the right to remain silent and the right to have an attorney with him." Nevertheless, the majority holds that because the challenged DVD recording and transcript of Carlton's statement reflects that Carlton was properly and completely advised of his Miranda rights before questioning, "the trial court properly admitted [Carlton's] statement into evidence." *Page 1224 
Because I believe that the State must lay a proper evidentiary predicate before an extrajudicial confession is admitted into evidence, and because I do not believe that the a proper predicate was laid in this case, I disagree with the majority's analysis affirming the conviction.
The following transpired at trial.
 "Q. [The prosecutor:] Okay. After [Carlton] was transported to headquarters, did he make a statement to you about what happened there at Austal [Ship Building]?
 "A. [Cpl. Bagsby:] Yes, he did.
 "Q. And when — where was he when he made this statement to you?
 "A. He was in our office of the homicide division.
 "Q. Okay. And before taking the statement from him, what did you tell [Carlton] regarding his constitutional rights?
 "A. I advised him of his rights, his right to remain silent, his right to have an attorney with him.
 "Q. And is that what's commonly known as Miranda warnings?
 "A. Correct.
 "Q. And did you read him his Miranda warnings?
 "A. I did.
 "Q. And was that interview, statement of [Carlton] recorded in anyway?
 "A. It was. It was audio and visually recorded.
 ". . . .
 "Q. Did you attempt to determine if he understood his constitutional rights?
 "A. I did.
 "Q. And did he?
 "A. He advised me he did.
 "Q. Was his speech coherent at the time?
 "A. It was.
 "Q. Did he waive his constitutional rights?
 "A. He did so.
 "Q. And before you asked him to make a statement about what occurred, did you or anyone else in your presence apply any threats or violence to [Carlton] to make him give a statement?
 "A. No, we did not.
 "Q. Okay. And did you or anyone in your presence tell [Carlton] it would be better or worse for him if he made a statement and confessed to the crime?
 "A. No, we did not.
 "Q. Did you offer [Carlton] anything in order to get him to make a statement?
 "A. No.
 "Q. Was his statement freely and voluntarily given?
 "A. It was.
 "Q. And did he agree to make a statement?
 "A. He did."
(R. 189-191.)
 "After the decision in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the State is required to lay two predicates before a confession is admissible. The first predicate requires a showing of voluntariness, i.e., absence of coercion or offer of reward, etc., and the second requires the State to prove that a proper Miranda warning, i.e., the right to remain silent and the right of counsel, etc., was given prior to any questioning by the police."
Ex parte Callahan, 471 So.2d 463, 464 (Ala. 1985).
Here, the State minimally presented a predicate for voluntariness, but the State did not lay the second predicate, proof of a proper Miranda warning. The Miranda
predicate was incomplete because Cpl. Bagsby statedgenerally that he "advised *Page 1225 
[Carlton] of his rights" and "read [Carlton] hisMiranda warnings" and he specifically stated that he advised that those rights included only: "his right to remain silent, his right to have an attorney with him." (R. 190.)
In Ex parte Johnson, 620 So.2d 709, 711 (Ala. 1993), the Alabama Supreme Court held that "the general question of whether the Miranda warnings were given does not adequately establish whether the warnings were properly
given and understood by the defendant."[3] The Alabama Supreme Court cited Swicegood v. State, 50 Ala.App. 105,277 So.2d 380 (1973), Arthur v. State, 575 So.2d 1165
(Ala.Crim.App. 1990), Robinson v. State, 399 So.2d 902
(Ala.Crim.App. 1981), and Thomas v. State,370 So.2d 1066 (Ala.Crim.App. 1978), as additional precedent supporting its ruling in Johnson. A complete Miranda
predicate (as opposed to the voluntariness predicate) would include all of the following.
 "[I]f a person in custody is to be subjected to interrogation, he must first be informed in clear and unequivocal terms that he has the right to remain silent; that anything he said can be used against him in court; that he has the right to have counsel present at the interrogation; that if he is indigent and cannot afford to pay a lawyer the court will appoint a lawyer to represent him during the interrogation. Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 [(1966)]. See Washington v. State, 287 Ala. 289, 251 So.2d 592 [(1971)].
Wallace v. State, 290 Ala. 201, 204, 275 So.2d 634,636 (1973).
Therefore, because I believe that to admit Carlton's statement was to allow the State to "bootstrap" the proper evidentiary foundation to the admitted evidence itself — the evidentiary foundation was established by review of the evidence after the evidence was admitted — I must disagree with the majority's analysis concluding that Carlton's confession was properly admitted into evidence.
Nevertheless, although I believe that Carlton's confession was wrongfully admitted into evidence, I believe it was harmless error.
 "Although we have held that [the appellant's] confession was wrongfully admitted into evidence, our analysis does not end. The question becomes: Was the receipt of the confession into evidence harmless error? See Coral [v. State], 628 So.2d [954] at 973 [(Ala.Crim.App. 1992)]; Smith v. State, 623 So.2d 369, 372 (Ala.Cr.App. 1992), cert. denied, 510 U.S. 1030, 114 S.Ct. 650, 126 L.Ed.2d 607 (1993). `In order for a constitutional error to be deemed harmless under Chapman [v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)], the state must prove beyond a reasonable doubt that the error did not contribute to the verdict. In order for the error to be deemed harmless under Rule 45[, Ala.R.App.P.], the state must establish that the error did not injuriously affect the appellant's substantial rights.' Coral, 628 So.2d at 973."
Weaver v. State, 710 So.2d 480, 488
(Ala.Crim.App. 1997) (challenge to the trial court's ruling following a suppression hearing). *Page 1226 
Here, in addition to an eyewitness who testified that Carlton shot the victim, another witness testified that he heard Carlton say "motherfucker," then he heard a bang and saw the victim fall to the floor. Other witnesses testified that they saw Carlton running away from the crime scene holding a gun. Additionally, Carlton's grandmother telephoned the police and told them that Carlton was at her house and to come and get him. When the police arrived, Carlton surrendered peacefully. The murder weapon was inside the grandmother's house. But see Ex parteJohnson, 620 So.2d at 712 (Where general Miranda
warnings were inadequate and identity of assailant was in question, "[w]e must recognize, however, that Johnson's statement that he had gotten himself into trouble and that he had eluded the police, as well as his statements regarding the accusations of his family and friend, were in some respects inculpatory. We cannot therefore hold that the improper admission of this evidence constituted harmless error.").
In light of the overwhelming evidence of Carlton's guilt, any error in the admission of the DVD and transcript of his statement to police was harmless. Thus, for the reasons I set forth above, I agree that there is no basis for reversal.
[1] Miranda v. Arizona, 384 U.S. 436, 444-45,86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] "[A]n objection that a proper foundation or predicate has not been made is specific enough to put the trial court on notice that counsel is challenging the prosecutor's procedure of presenting the evidence." Wyatt v. State, 620 So.2d 77,79 (Ala.Crim.App. 1992) ("The appellant contends that the trial court erred in receiving a tape recording into evidence because, he says, the state failed to lay a proper predicate. Before the state played the tape in court, the appellant objected on the grounds that `[n]o proper foundation' had been laid."), citingJennings v. State, 588 So.2d 540
(Ala.Crim.App. 1991).
[3] In Johnson, the State's inquiry concerningMiranda questioning consisted of the following:
 "Q. [The prosecutor:] All right. Prior to having this conversation with Rickey Johnson did you read him what is commonly known as his Miranda rights?
 "A. I did."
Ex parte Johnson 620 So.2d at 711.
 *Page 374